LUIS A. CARRILLO, SBN 70398
MICHAEL S. CARRILLO, SBN 258878
J. MIGUEL FLORES, SBN 240535
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
South Pasadena, California 91030
Tel: (626) 799-9375
Fax: (626) 799-9380

BRADLEY J. YOURIST, SBN 180025
DANIEL J. YOURIST, SBN 180026
**YOURIST LAW CORPORATION, APC**
10850 Wilshire Blvd., Suite 710
Los Angeles, California 90024-4325
Telephone: (310) 575-1175
bjy@youristlaw.com
djy@youristlaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ISABEL VALDEZ,** an individual; **JANE A.V. DOE**, a minor, by and through her guardian *ad litem* Jessenia Torres; and **JANE A.B. DOE**, a minor, by and through her guardian *ad litem* Jessenia Torres; <br><br> Plaintiffs, <br><br> v. <br><br> **CITY OF FONTANA**, **OFFICER ALEX YANEZ**, and **DOES 1 through 20**, inclusive, <br><br> Defendants. | Case No.: 5:24-cv-2631 <br><br> **COMPLAINT FOR DAMAGES FOR:** <br><br> 1. FOURTH AMENDMENT, EXCESSIVE FORCE (42 U.S.C. § 1983) <br> 2. FOURTEENTH AMENDMENT, DENIAL OF MEDICAL CARE (42 U.S.C. § 1983) <br> 3. FOURTEENTH AMENDMENT, INTERFERENCE WITH FAMILIAL RELATIONS (42 U.S.C. § 1983) <br> 4. MUNICIPAL LIABILITY, UNCONSTITUTIONAL CUSTOM OR POLICY (42 U.S.C. § 1983) <br> 5. MUNICIPAL LIABILITY, FAILURE TO TRAIN (42 U.S.C. § 1983) <br> 6. BATTERY (WRONGFUL DEATH) <br> 7. NEGLIGENCE (WRONGFUL DEATH) <br> 8. VIOLATION OF BANE ACT (CAL. CIVIL CODE §52.1) |

1

**DEMAND FOR JURY TRIAL**

    **COME NOW**, Plaintiffs **ISABEL VALDEZ**, an individual; **JANE A.V. DOE**, a minor, by and through her guardian *ad litem* Jessenia Torres; and **JANE A.B. DOE**, a minor, by and through her guardian *ad litem* Jessenia Torres (collectively, "Plaintiffs") allege as follows:

**JURISDICTION AND VENUE**

    1.    This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

    2.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

**INTRODUCTION**

    3.    This civil rights and state tort action seeks compensatory damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal officer-involved shooting of Plaintiffs' father and son, Jaime Valdez, on November 11, 2023.

    4.    Plaintiffs allege that the death of Jaime Valdez ("Decedent") was a result of the excessive use of deadly force by OFFICER ALEX YANEZ, and DOES 1-15 of the CITY OF FONTANA ("CITY").

    5.    Further, Plaintiffs allege that the CITY's policies and customs such as the failure to provide needed mental health assistance, failure to train to deescalate the

2

interaction, and employ less-lethal weapons, are fundamentally unconstitutional and have violated the civil rights of residents of the CITY.  Accordingly, Plaintiffs herein seek by means of this civil rights action to hold accountable those responsible for the death of Decedent, and to challenge the unconstitutional policies and practices of the CITY.

## PARTIES

6.     Plaintiff **ISABEL VALDEZ,** is an individual residing in the CITY OF FONTANA and is the natural mother of Decedent. ISABEL VALDEZ, sues in her individual capacity as the mother of Decedent and a representative capacity as a successor-in-interest to Decedent pursuant to California Code of Civil Procedure §377.60. ISABEL VALDEZ seeks both survival and wrongful death damages under federal and state law.   On April 30, 2024, ISABEL VALDEZ presented a claim to the CITY pursuant to the claims of the California Govt. Code.   On June 14, 2024, the claim was denied by the CITY.

7.     Plaintiff **JANE A.B. DOE**, a minor, by and through her guardian *ad litem*, Jessenia Torres, is the nonbiological daughter of Decedent. Decedent raised and supported JANE A.B. DOE from the age of 2 until his untimely death in 2023. JANE A.B. DOE is now 14 years old. Decedent was the father-figure in JANE A.B. DOE'S life, teaching her morals and values and being there for her for those moments as a father to show to ride a bike, taking her to school, and assisting with her homework. When JANE A.B. DOE'S mother was pregnant with her second child (A.V.), Decedent was the primary caretaker of JANE A.B. DOE, ensuring that she was fed, dressed, and ready for school. JANE A.B. DOE enjoyed spending time with Decedent, including going on hikes, to parks, lakes, and beaches. Decedent was a loving father to JANE A.B. DOE and referred to her as his "daughter" in the presence of family, friends and even on social media where he frequently posted pictures of him and JANE A.B. DOE together. In fact, Decedent held JANE A.B. DOE out as his own daughter and had gotten tattoos of both JANE A.B. DOE'S and JANE A.V. DOE'S initials. For much of

JANE A.B. DOE'S life, Decedent provided half of the financial support in taking care of JANE A.B. DOE. Decedent bought her clothing, shoes, and Christmas presents. After Decedent's and Jessenia Torres' seperation, Decedent continued to take part in JANE A.B. DOE'S life, including providing her with financial support. JANE A.B. DOE sues in her idividual capacity as the dependant of Decedent and in the representative capacity as a successor-in-interest to Decedent pursuant to California Civil Code of Civil Procedure § 377.60. JANE A.B. DOE seeks both survival damages and wrongful death damages under federal and state law.

8.    Plaintiff **JANE A.V. DOE**, a minor, by and through her guardian *ad litem*, Jessenia Torres, is the natural daughter of Decedent. Decedent had a frequent and ongoing relationship with his biological daughter from the time of her birth. JANE A.V. DOE sues in her idividual capacity as the daugther of Decedent and in the representative capacity as a successor-in-interest to Decedent pursuant to California Civil Code of Civil Procedure § 377.60. JANE A.V. DOE seeks both survival damages and wrongful death damages under federal and state law.

9.    At all relevant times, Defendant **CITY OF FONTANA** ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Fontana Police Department and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions omissions, policies, procedures, practices, and customs of the Fontana CITY Police Department, and its employees and agents complied with the laws of the United States of the State of California. At all relevant times, CITY was the employer of all or some of Defendants DOES 1-20.

10.    At all relevant times, Defendant OFFICER **ALEX YANEZ** ("**OFFICER YANEZ**") and DOES 1-15 are officers for the Fontana Police Department (**"DOE**

**OFFICERS"**). At all relevant times, OFFICER YANEZ and DOE OFFICERS 1-15 were acting under color of law within the course and scope of their duties as officers for the Fontana Police Department; and were acting with the complete authority and ratification of their principal, Defendant CITY.

11.    Defendants DOES 15-20 are managerial, supervisorial, and policy-making employees of the CITY's Police Department who were acting under color of law within the course and scope of their employment for the CITY's Police Department at the time of this incident ("**DOE SUPERVISORS**"). At all relevant times, DOE SUPERVISORS were acting with the complete authority and ratification of their principal, Defendant CITY.

12.    In doing the acts, failings, and/or omissions as hereinafter described, Defendants DOE OFFICERS were acting on the implied and actual permission and consent of Defendants DOE SUPERVISORS.

13.    In doing the acts, failings, and/or omissions as hereinafter described, Defendants DOE SUPERVISORS 15-20 were acting on the implied and actual permission and consent of the CITY.

14.    The true names and capacities, whether individual, corporate, association or otherwise of Defendant DOES 1-20, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein. Defendants DOES 1-20 are sued in their individual capacities.

15.    At all times mentioned herein, each and every Defenadant, including DOES 1-20, was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

16.    All of the acts complained of herein by Plaintiffs against Defendants,

including DOES 1-20, were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting with the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified (or will ratify) all of the acts complained herein.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

17.    On or about November 11, 2023, sometime around 7:30 p.m., OFFICER ALEX YANEZ of the Fontana Police Department responded to a 911 call regarding a man suspected of being under the influence of drugs and suspected of having a mental health crisis, later identified as Decedent, Jaime Valdez, at the front of a home located on the 7100 block of Big Sur Street, in Fontana, California.

18.    Plaintiffs are informed and believe and based thereon allege that Officer OFFICER YANEZ arrived at the residential address that was the subject of the 911 call and found Decedent Jaime Valdez lying on the ground on the driveway leading up to the garage of the home where Decedent's family members lived, including his mother, ISABEL VALDEZ.  Decedent appeared to be lethargic, sleeping, and possibly unconcious as he was approached by OFFICER YANEZ in the driveway.

19.    Plaintiffs are informed and believe and based thereon allege that OFFICER YANEZ intiated contact with Decedent Jaime Valdez who continued to lie on the ground on the driveway leading to the garage of the home.   OFFICER YANEZ quickly escalated the situation due to Decedent's inability to follow commands because of his altered state from drugs and mental health problems.    Plaintiffs are informed and believe and based thereon allege that Officer OFFICER YANEZ displayed anger and frustration at Decedent's inability to comply with commands and OFFICER YANEZ raised his voice and issued strong commands which confused and agitated Decedent.   OFFICER YANEZ did not take his time with Decedent or used empathetic language that would increase voluntary compliance from Decedent.   Plaintiffs are informed and believe and based thereon allege that OFFICER YANEZ threatened

Decedent with arrest and intiated physical contact with Decedent which escalated further the situation and caused distress and agitation to Decedent.

20.    Plaintiffs are informed and believe and based thereon allege that OFFICER YANEZ did not call for back up or call mental health professionals to seek assitance prior to Decedent becoming agitated from OFFICER YANEZ' threats and forceful tone.   OFFICER YANEZ elected to deploy his Taser on Decedent.   Plaintiffs are informed and believe and based thereon allege that a Taser delivers eletrical shock to a body which can cause involuntary movements.   OFFICER YANEZ futher elected to deploy lethal force on Decedent causing serious physical injury, pre-death pain and suffering, and eventual death.

21.    Plaintiffs are informed and believe and based thereon allege that although Decedent was unarmed, OFFICER YANEZ decided to use lethal force and fired three shots toward  Decedent that struck him and caused fatal injuries.

22.    Plaintiffs are informed and believe and based thereon allege that Decedent was unarmed, not holding a gun, a knife, or any other deadly weapon when OFFICER YANEZ initiated contact with Decedent.  Further, OFFICER YANEZ did not have any specific information that Decedent was armed with a gun, knife, or any other deadly weapon upon arriving at the scene of the call.

23.    Plaintiffs are informed and believe and based thereon allege that as result of being struck by bullets from OFFICER YANEZ's weapon Decedent required immediate medical care.   Plaintiffs further allege that OFFICER YANEZ and DOE OFFICERS 1-15 delayed summoning medical care and delayed rendering medical aid. The delay of medical care caused Decedent harm, pain, suffering, and ultimate death.

24.    In addition to the foregoing evidence of the use of unjustified, deadly force on November 11, 2023, the autopsy performed by the San Bernardino County' Police's Department forensic pathologist, on or about November 14, 2023, further evidences the use of unjustified, deadly force. The autopsy report included a list of gunshot wounds and the entry wounds and trajectory of the gunshot wounds present

on Decedent's body during the autopsy:

**GSW #1 OF THE HEAD**, **penetrating:**

- **Entry wound:** 5 inches below the top of the head

- **Exit wound:** None noted.

- **Path & Injuries:** Hemorrhagic wound track sequentially perforated the skin and soft tissue of the posterior scalp, cranial bone, and ends in brain parenchyma.

- **Trajectory** Back to front.

- **Projectile:** Recovered from the frontal brain parenchyma.

**GSW #2 OF THE LEFT SHOULDER, penetrating:**

- **Entry wound:** Top of the left medial shoulder.

- **Exit wound:** None noted.

- **Path & Injuries:** Hemorrhagic wound track sequentially perforated the skin and soft tissue of the left shoulder, left clavicle, and ends in the soft tissue of the left back.

- **Trajectory:** Front to back, left to right, and downward.

- **Projectile:** Recovered from the left back soft tissue.

**GSW #3 OF THE LEFT SHOULDER, penetrating:**

- **Entry wound:** Anterior aspect of left shoulder.

- **Exit wound:** None noted.

- **Path & Injuries:** Hemorrhagic wound track sequentially perforated the skin and soft tissue of the left shoulder, left clavicle, and ends in the soft tissue of the left upper back.

- **Trajectory:** Front to back, left to right, and downward.

- **Projectile:** Recovered from left upper back soft tissue.

25.    At the time of the shooting, Decedent was unarmed and did not have in his possesion a gun, knife, or any other deadly weapon.  Further,  Plaintiffs allege on

on information and belief that at the time of the shooting, Decedent was not capable of causing death or serious bodily injury to anyone, including OFFICER YANEZ, that required the use of deadly force. Further, Decedent's back was toward OFFICER YANEZ as evidenced from the entry of wound to the back of Decedent's head.

26.     Plaintiffs are informed and believe and based thereon allege that OFFICER YANEZ did <u>not</u> give Decedent verbal warnings that less-lethal or deadly force would be used prior to shooting Decedent, despite less-lethal force being feasible to do so and they did not issue appropriate commands to Decedent.

27.     Further, Plaintiffs are informed and believe and based thereon allege that OFFICER YANEZ did <u>not</u> notify the Mental Evalution Teams ("MET"). OFFICER YANEZ did <u>not</u> properly assess the situation regarding Decedent's mental state; did <u>not</u> notify supervisors of the situation; did <u>not</u> employ tactics to de-escalate the situation; did <u>not</u> give Decedent sufficient time to comprehend the presence of officers at his mother's residence; did <u>not</u> develop a tactical plan regarding Decedent's mental state; did not speak to Decedent in a sensitive and non-threatening manner; and did <u>not</u> give Decedent the opportunity to cooperate with the instructions of Police's officers.

28.     OFFICER YANEZ did <u>not</u> employ tactics to ***de-escalate*** the situation; failed to give Decedent time and space to understand the presence of police; failed to give Decedent time and space to accept the presence of the officers; failed to approach and speak to Decedent in a non-threatening manner; and failed to give Decedent the opportunity to consent to and cooperate with the instructions of the officers.

29.     Decedent was suffering from a mental health crisis when OFFICER YANEZ was called to address the situation with Decedent.    Prior to OFFICER YANEZ' arrival, Decedent did not pose a threat to the members of the public and had not committed a crime.   Prior to OFFICER YANEZ's responding other officers of the CITY's police department were aware that Decedent was experiencing a mental health crisis as they responded to calls involving Decedent that very same day but released him from custody.   The force used by OFFICER YANEZ, was unnecessary, excessive,

1  and unreasonable under the totality of the circumstances.

2      30.    Plaintiffs are informed and believe and based thereon allege that

3  OFFICER YANEZ did not show a reverance for human life.

4  ### FIRST CLAIM FOR RELIEF

5  **Unreasonable Search and Seizure - Excessive Force (42 U.S.C. § 1983)**

6  **By All Plaintiffs against Defendant OFFICER YANEZ**

7      31.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1

8  through 30 of this Complaint with the same force and effect as if fully set forth herein.

9      32.    The unreasonable use of force by OFFICER YANEZ deprived the

10 Decedent of his right to be secure in his person against unreasonable searches and

11 seizures as guaranteed to Decedent under the Fourth Amendment to the United States

12 Constitution and applied to state actors by the Fourteenth Amendment.

13     33.    As a result, Decedent suffered extreme pain and suffering and eventually

14 suffered a loss of life. Plaintiffs have also been deprived of the life-long love,

15 companionship, comfort, support, society, care, and sustenance of Decedent, and will

16 continue to be so deprived for the remainder of their natural lives.

17     34.    As a result of the conduct of OFFICER YANEZ, Plaintiffs sufferred

18 damages in amounts to be determined.

19     35.    This use of deadly force was excessive and unreasonable under the

20 circumstances.  Decedent was unarmed and could not be a threat to OFFICER YANEZ.

21 OFFICER YANEZ escalated the situation and agitated Decedent who was initially on

22 the ground not posing a threat to anyone.   OFFICER YANEZ decided to use deadly

23 force without warning.    Defendant OFFICER YANEZ' actions thus deprived

24 Decedent of his right to be free from unreasonable searches and seizures under the

25 Fourth Amendment and applied to state actors by the Fourteenth Amendment.

26     36.    The conduct of Defendant OFFICER YANEZ was willful, wanton,

27 malicious, and done with reckless disregard for the rights and safety of Decedent and

28 therefore warrants the imposition of exemplary and punitive damages as to Defendant

1  OFFICER YANEZ.

2      37.    Plaintiffs bring these claims as successors-in-interests to the Decedent,

3  and seek both survival and wrongful death damages for the violation of Decedent's

4  rights.

5      38.    Plaintiffs also seek attorney's fees under this claim.

6                    **SECOND CLAIM FOR RELIEF**

7      **Fourteenth Amendment - Denial of Medical Care (42 U.S.C. § 1983)**

8          **By All Plaintiffs against Defendants OFFICER YANEZ**

9                      **and DOE OFFICERS 1-15**

10     39.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1

11 through 38 of this Complaint with the same force and effect as if fully set forth herein.

12     40.    The denial of medical care by Defendants OFFICER YANEZ and DOE

13 OFFICERS 1-15 deprived Decedent of his right to be secure in his person against

14 unreasonable searches and seizures as guaranteed to Decedent under the Fourth

15 Amendment to the United States Constitution and applied to state actors by the

16 Fourteenth Amendment.

17     41.    As a result, Decedent suffered extreme mental and physical pain and

18 suffering. Plaintiffs have also been deprived of the life-long love, companishionship,

19 comfort, support, society, and care, Decedent, and will continue to be so deprived for

20 the remainder of their natural lives.

21     42.    Defendants OFFICER YANEZ and DOE OFFICERS 1-15 knew that

22 failure to provide timely medical treatment to Decedent could result in further

23 significant injury or the unnecessary and wanton infliction of pain, but disregarded that

24 serious medical need, causing Decedent's death.

25     43.    After shooting Decedent, OFFICER YANEZ and DOE OFFICERS 1-15

26 did not timely summon or provide timely medical attention for Decedent who was

27 bleeding profusely and had obvious injuries and OFFICER YANEZ and DOE

28 OFFICERS 1-15 did not allow, and rather prevented resopnding medical personnel on-

scene to timely render medical aid/assistance to Decedent.

44. The conduct of Defendants OFFICER YANEZ and DOE OFFICERS 1-15 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent.

45. Plaintiffs bring this claim as successors-in-interests to the Decedent, and seek both survival and wrongful death damages for the violation of Decedent's rights.

46. Plaintiffs also seek attorney's fees under this claim.

### THIRD CLAIM FOR RELIEF

**Fourteenth Amendment – Interference with Familial Relations**

**(42 U.S.C. § 1983)**

**By All Plaintiffs against Defendants OFFICER YANEZ**

**and DOE OFFICERS 1-15**

47. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 46 of this Complaint with the same force and effect as if fully set forth herein.

48. Isabel Valdez had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her son, Decedent.

49. JANE A.V. DOE had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her father, Decedent.

50. JANE A.B. DOE had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's

COMPLAINT FOR DAMAGES

1  familial relationship with her father figure, Decedent.

2      51.    As a result of the excessive force by Defendants OFFICER YANEZ and

3  DOE OFFICERS 1-15, Decedent died. Plaintiffs were thereby deprived of their

4  constitutional right of familial relationship with Decedent.

5      52.    Defendants OFFICER YANEZ and DOE OFFICERS 1-15, acting under

6  color of state law, thus violated the Fourteenth Amendment rights of Plaintiffs to be

7  free from unwarranted inferference with their familial relationship with Decedent.

8      53.    The aforementioned actions of OFFICER YANEZ and DOE OFFICERS

9  1-15, along with the undiscovered conduct, shock the conscience, in that they acted

10  with deliberate indifference to the constitutional rights of the Decedent and Plaintiffs

11  with purpose to harm unrelated to any legitimate law enforcement objective.

12      54.    Defendants OFFICER YANEZ and DOE OFFICERS 1-15, acting under

13  color of state law, thus violated the Fourteenth Amendment rights of Decedent and

14  Plaintiffs.

15      55.    As a direct and proximate cause of the actions of OFFICER YANEZ and

16  DOE OFFICERS 1-15, Plaintiffs suffered extreme and severe mental anguish and pain

17  and have been injured in mind and body. Plaintiffs have also been deprived of the life-

18  long love, companishionship, comfort, support, society, care, and sustenance of

19  Decedent, and will continue to be so deprived for the remainder of their natural lives.

20  Plaintiffs also claiming funeral and burial expenses and loss of financial support.

21      56.    As a result of the conduct of OFFICER YANEZ and DOE OFFICERS 1-

22  15, they are liable for Decedent's injuries because they were integral participants in the

23  denial of due process.

24      57.    The conduct of OFFICER YANEZ and DOE OFFICERS -15 was willful,

25  wanton, malicious, and done with reckless disregard for the rights and safety of

26  Decedent and therefore warrants the imposition of exemplary and punitive damages as

27  to Defendants OFFICER YANEZ and DOE OFFICERS 1-15.

28      58.    Plaintiffs bring this claim as invidivduals seek both survival and wrongful

1    death damages for the violation of Decedent's rights.

2        59.    Plaintiffs also seek attorney's fees under this claim.

3    **<u>FOURTH CLAIM FOR RELIEF</u>**

4    **Muncipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

5    **By All Plaintiffs against Defendants CITY and DOE SUPERVISORS**

6        60.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1

7    through 59 of this Complaint with the same force and effect as if fully set forth herein.

8        61.    On information and belief, the CITY made a formal decision that the

9    shooting of Decedent was found to be "within policy" of the CITY's Police's

10   Department, notwithstanding that Decedent was not an imminent threat to OFFICER

11   YANEZ at the moment he was shot. This manifests a deliberate indifference to the

12   civil rights of the residents of the CITY.

13       62.    Defendants CITY, DOE SUPERVISORS, and CITY executives, ratified,

14   acquiesced, and condoned the shooting of Decedent by OFFICER YANEZ.

15       63.    On information and belief, OFFICER YANEZ and DOE OFFICERS 1-

16   15, were not disciplined, and were not given additional training, after the shooting of

17   Decedent, which evidences ratification and acquiescence in the shooting of Decedent

18   by OFFICER YANEZ and DOE OFFICERS 1-15.

19       64.    On and for some time prior to November 11, 2023, and continuing to the

20   present date, Defendants CITY and DOE SUPERVISORS, deprived Decedent of the

21   rights and liberties secured to him by the Fourth and Fourteenth Amendments to the

22   United States Constitution, because said Defendants and their supervising and

23   managerial employees, acted with gross negligence and with reckless and deliberate

24   indifference to the rights and liberties of the public in general, and of Plaintiffs and

25   Decedent, and of persons in their class, situation and comparable position in

26   particularly, knowingly maintained, enforced, and applied an official recognized

27   custom, policy, and practice of:

28

1.  Employing and retaining as Police's officers, and other personnel, including OFFICER YANEZ and DOE OFFICERS, whom Defendants CITY, and DOE SUPERVISORS, at all times material herein knew or reasonably should have known had dangerous propensities of abusing their authority and for mistreating citizens by failing to follow written CITY Police's Department policies.

2.  Of inadequately supervising, training, controlling, assigning, and disciplining CITY's Police's officers, and other personnel, who Defendants CITY, and DOE SUPERVISORS knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

3.  By failing to adequately train officers, including OFFICER YANEZ and DOE OFFICERS, and failing to institute appropriate policies, regarding the use of excessive force, including deadly force;

4.  By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which is also demonstrated by inadequate training regarding these subjects. The policies, custom, and practices of CITY, and DOE SUPERVISORS were done with a deliberate indifference to the individuals' safety and rights; and

5.  By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining the intentional misconduct of Defendant CITY Police's officers and/or, such as OFFICER YANEZ and DOE OFFICERS;

6.  By failing to discipline Defendant CITY Police's officers, such as OFFICER YANEZ and DOE OFFICERS, for conduct such as unlawful detention, excessive use of deadly force, and failure to provide timely medical assistance;

7.  By ratifying the misconduct of Defendant CITY Police's officers, such as OFFICER YANEZ and DOE OFFICERS, for conduct such as excessive use of deadly force;

8.  By failing to properly investigate incidents of excessive use of deadly force by Defendant CITY Police's officers, such as OFFICER YANEZ and DOE OFFICERS; and,

9.  By failing to remove "problem" officers from patrol duties.

COMPLAINT FOR DAMAGES

65. It is the policy, custom, and practice of Defendants CITY to <u>not</u> objectively investigate complaints of previous incidents of wrongful shootings, excessive use of deadly force, illegal arrests, falsification of police reports, and instead, to officially claim that such incidents are justified and proper.

66. The policies, customs, and practices of Defendants CITY does in fact encourage CITY Police's officers such as OFFICER YANEZ and DOE OFFICERS 1-15, to believe that wrongful shootings, excessive use of deadly force against residents, illegal arrests, fabrication of police reports, is permissible and will be permitted by Defendants CITY. These policies and customs of the CITY was the driving force that caused OFFICER YANEZ to shoot Decedent.

67. Other systemic deficiencies, policies, customs, and practices which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the CITY Police's officers, such as OFFICER YANEZ and DOE OFFICERS 1-15, that Defendants CITY were aware of, and has condoned and ratified include:

a. Preparation of investigative reports designed to vindicate the use of excessive use of force, regardless of whether such force was justified;

b. Preparation of investigative reports which uncritically rely solely on the word of Police's officers involved in the assault, battery, excessive use of force incidents and which systematically fail to credit testimony by non-police witnesses;

c. Preparation of investigative reports which omit factual information and physical evidence which contradicts the accounts of the officers involved;

d. Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigations of the excessive use of force;

e. Failure to objectively and independently review investigative reports by responsible superior officers for accuracy or completeness and acceptance of conclusions which are

unwarranted by the evidence of the wrongful shooting, assault, excessive use of deadly force, or which contradict such evidence.

68.     By reason of the aforementioned policies and practices of Defendants CITY and DOE SUPERVISORS, Decedent was severely injured and subjected to pain and suffering and lost his life.

69.     Defendants CITY and DOE SUPERVISORS, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Decedent, and other individuals similarly situated.

70.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants CITY and DOE SUPERVISORS, acted with an intentional, reckless, and callous disregard for the rights for the life of Decedent, and Decedent's and Plaintiffs' constitutional rights. Defendants CITY and DOE SUPERVISORS, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

71.     Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants CITY and DOE SUPERVISORS were affirmatively linked to and were significantly influential force behind the injuries of Decedent and Plaintiffs.

72.     By reason of the aforementioned acts and omissions of Defendants CITY and DOE SUPERVISORS, Plaintiffs were caused to incur funeral and related burial expenses, and loss of financial support.

73.    By reason of the aforementioned acts and omissions of Defendants CITY and DOE SUPERVISORS, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support.

74.    Accordingly, Defendants CITY and DOE SUPERVISORS each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

75.    Plaintiffs seek wrongful death and survival damages under this claim.

76.    Plaintiffs also seek statutory attorney fees under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

### By All Plaintiffs against Defendants CITY and DOE SUPERVISORS

77.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 76 of this Complaint with the same force and effect as if fully set forth herein.

78.    Defendants OFFICER YANEZ and DOE OFFICERS 1-15 acted under color of law. The acts of said Defendants deprived Decedent and Plaintiff of their particular rights under the United States Constitution.

79.    The training policies of Defendants CITY and DOE SUPERVISORS were not adequate to train its Police's officers to handle the usual and recurring situations with which they must deal.

80.    Defendants CITY and DOE SUPERVISORS were deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

81.    The negligent and unjustified use of force by the said Defendants OFFICER YANEZ and DOE OFFICERS 1-15 was a result of the negligent training by the Defendants CITY and DOE SUPERVISORS, who failed to train CITY officers and as to proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. The Defendants CITY and DOE SUPERVISORS were responsible for the training of CITY officers to ensure that the actions, procedures, and practices of said Defendants complied with Peace Officer

Standards and Training (POST) training standards regarding proper police tactics, and proper use of deadly force.

82.     The Defendants CITY and DOE SUPERVISORS negligently failed to train CITY officers to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. POST was established by the California Legislature in 1959 to set minimum training standards for California peace officers. The training policies of CITY were not adequate to train its peace officers to handle the usual and recurring situations with residents that said Defendants have contact with.

83.     The training policies of the CITY were deficient in the following ways:

a.     The CITY failed to properly train CITY Police's officers, so that officers do not *escalate* their interactions with residents and do not overreact and resort to use of deadly force when the use of force was not necessary.

b.     The CITY failed to properly train CITY Police's officers, so that Defendants do not permit fear to reach the point of becoming unreasonable fear, and not objectively reasonable, which would result in the use of force to cause that would cause the death of residents, such as Decedent. This was a part of the CITY's negligent failure to train said Defendants to properly and *adequately assess* the need to use force against Decedent.

c.     The CITY failed to properly train CITY failed to properly train CITY Police's officers, such as said Defendants, in *proper police tactics*, such as situational awareness so that Police's officers do not utilize negligent tactics, such as said Defendants herein. Because of this lack of proper training by the CITY, the Defendants OFFICER YANEZ and DOE OFFICERS 1-15, did not use proper police tactics in handling of the contact with Decedent, and instead used defective police tactics, including the lack of a *situational awareness* by the said Defendants. These defective tactics resulted in the death of Decedent.

d.     The CITY failed to properly train CITY Police's officers, such as Defendants herein, would be trained in the importance of *effective communication* prior to using force.

19

e.    Because of the lack of proper training by the CITY, said Defendants did not use effective communication prior to and during the use of force against Decedent. The ineffective communication of information by said Defendants prior to, and during the incident, resulted in the death of Decedent.

84.    The failure of Defendants CITY to provide adequate training caused the deprivation of Decedent's and Plaintiffs' rights by said Defendants; that is, Defendant CITY's failure to train is so closely related to the deprivation of the Decedent's and Plaintiffs' rights as to be the moving force that caused the ultimate injury.

85.    By failing to provide adequate training to CITY Police's officers, including OFFICER YANEZ and DOE OFFICERS 1-15, DOE SUPERVISORS, acted with an intentional, reckless, and callous disregard for the life of Decedent's and Decedent's and Plaintiffs' constitutional rights. Defendants OFFICER YANEZ and DOE OFFICERS 1-15, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

86.    By reason of the aforementioned acts and omissions of Defendants, Plaintiffs were caused to incur funeral and related burial expenses, and loss of financial support.

87.    By reason of the aforementioned acts and omissions, the Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of Decedent.

88.    Accordingly, Defendants CITY and DOE SUPERVISORS, each are liable to the Plaintiff for compensatory damages under 42 U.S.C. § 1983.

89.    Plaintiffs seek wrongful death and survival damages under this claim.

90.    Plaintiffs also seek statutory attorney fees under this claim.

///

///

///

### **SIXTH CLAIM FOR RELIEF**

**Battery (Cal. Govt. Code § 820 and California Common Law)**

**(Wrongful Death)**

**By All Plaintiffs against all Defendants**

91.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 90 of this Complaint with the same force and effect as if fully set forth herein.

92.    Defendant OFFICER YANEZ, while working as Police's officers for the CITY Police's Department, and acting within the course and scope of his duties, intentionally shot Decedent several times. Defendants OFFICER YANEZ had no legal justification for using deadly force against Decedent, and said Defendant's use of force while carrying out their officer duties was an unreasonable use of force, especially since Decedent was not an imminent threat to OFFICER YANEZ, or anyone else. Further, Decedent was unarmed at the time of the shooting. The use of deadly force was also unreasonable because there were clearly less lethal options available. As a result of the actions of OFFICER YANEZ, Decedent suffered severe mental and physical pain and suffering, loss of enjoyment of life and ultimately died from his injuries and lost learning capacity.

93.    CITY is vicariously liable for the wrongful acts of OFFICER YANEZ and DOE OFFICERS 1-15, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

94.    The conduct of OFFICER YANEZ was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and Decedent, entitling Plaintiffs, individually and as successors-in-interest to Decedent, to an award of exemplary and punitive damages.

95.    Plaintiffs bring this claim both individually and as successors-in-interest to Decedent, and seek both survival and wrongful death damages.

**SEVENTH CLAIM FOR RELIEF**

**Negligence (Cal. Govt. Code § 820 and California Common Law)**

**(Wrongful Death)**

**By All Plaintiffs against all Defendants**

96.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 95 of this Complaint with the same force and effect as if fully set forth herein.

97.      The actions and inactions of the Defendants were negligent, including but not limited to:

    a.    The failure to properly and adequately train employees including OFFICER YANEZ with regard to the use of force, including deadly force;

    b.    The failure to properly and adequately assess the need to detain, arrest, and use force, including deadly force against Decedent;

    c.    The negligent tactics and handling of the situation with Decedent, including pre-shooting negligence;

    d.    The negligent detention, arrest, and use of force, including deadly force, against Decedent;

    e.    The failure to provide and or summons prompt medical care to Decedent;

    f.    Shooting an unarmed individual;

    g.    The failure to give a verbal warning or any kind of command prior to shooting;

    h.    And failure to properly train and supervise employees, both professional and non-professional, including OFFICER YANEZ and DOE OFFICERS 1-15.

98.      As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Decedent was caused suffer extreme mental and physical pain and suffering and ultimately died and lost earning capacity. Also as a direct and proximate result of defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the life-long love, companionship,

comfort, support, society, care, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs also claiming funeral and burial expenses and loss of financial support.

99.    CITY is vicariously liable for the wrongful acts of OFFICER YANEZ and DOE OFFICERS 1-15 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

100.    Plaintiffs bring this claim individually and as successors-in-interest to Decedent, and seek both survival and wrongful death damages.

## EIGHTH CLAIM FOR RELIEF

### Violation of Bane Act (Cal. Civil Code § 52.1)

### By Plaintiffs against all Defendants

101.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 100 of this Complaint with the same force and effect as if fully set forth herein.

102.    California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (or by the use of unconstitutionally excessive force).

103.    Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of this state, has been interfered with, as described in subdivision (a), may institute and prosecute in his name and on his own behalf a civil action for damages, including but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

104.    The Bane Act, the California Constitution and California common law prohibit the use of excessive force by law enforcement. California Civil Code, Section

52.1(b) authorizes a private right of action and permits survival actions for such claims. See *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141, 144 (1995). "[A] successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudhry v. CITY of South Gate,* 751 F.3d 1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive force—is [] within the protection of the Bane Act"). Defendants OFFICER YANEZ violated DECEDENT's constitutional rights by using excessive force, whose acts of unreasonable force were done intentionally, and with a reckless disregard for his constitutional rights and for his life.  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044-1045 (9th Cir. 2018)

105.  Defendants OFFICER YANEZ's use of deadly force was excessive and unreasonable under the circumstances, especially since Decedent was unarmed when he was fatally shot. Further, the involved officer did not give a verbal warning before fatally shooting Decedent, despite being feasible to do so. Defendants' actions thus deprived Decedent of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment. The conduct of Defendants OFFICER YANEZ and DOE OFFICERS 1-15 was a substantial factor in causing the harm, losses, injuries, and damages of Plaintiff.

106.  Defendants OFFICER YANEZ intentionally violated Decedent's rights under § 1983 by using excessive deadly force against Decedent, including but not limited to, shooting the unarmed Decedent without warning, several times. Further, these acts by Defendants OFFICER YANEZ and DOE OFFICERS 1-15 demonstrate that they had a reckless disregard for Decedent's constitutional rights.

107.  At the time of the shooting Decedent did not pose an immediate threat of death or serious bodily injury and Decedent never verbally threatened anyone prior to the shooting. There is direct and circumstantial evidence that Defendant OFFICER YANEZ intentionally violated Decedent's rights under § 1983 by unlawfully detaining him, by attempting to unlawfully arrest him and by fatally shooting Decedent multiple times.

108. Defendants OFFICER YANEZ and DOE OFFICERS 1-15, while working as officers for the CITY Police's Department, and acting within the course and cope of their duties, interfered with or attempted to interfere with the rights of Decedent to be free from unreasonable searches and seizures, to equal protection of the laws, to access to the courts, and to be free from state actions that shock the conscience, by threatning or committing acts involving violence, threats, coercsion, or intimidation.

109.   Decedent was caused to suffer extreme mental and physical pain and suffering and ultimately died and lost earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs also claim funeral and burial expenses and loss of financial support.

110. The conduct of OFFICER YANEZ and DOES 1-20 was a substantial factor in causing the harms, losses, injuries and damages of Decedent and Plaintiffs.

111.   Defendants CITY are vicariously liable for the wrongful acts of DOES 1-20 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

112.   Plaintiffs bring this claim as successors-in-interest to the Decedent, and seek survival damages for the violation of Decedent's rights.

113.   Plaintiffs also seek costs and attorney fees under this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in his favor and against Defendants CITY, OFFICER YANEZ, and DOES 1-20, inclusive, as follows:

A.    For compensatory damages, including both survival and wrongful death damages under federal and state law,  in the amount to be proven at trial;

B.    For other general damages in an amount according to proof at trial;

C.    For other non-economic damages in an amount according to proof at trial;

D.    For other special damages in an amount according to proof at trial;

E.    Pre-death pain and suffering pursuant to Cal. Code of Civ. Pro. § 337.34, and survival damages.

F.    For punitive damages against the individual defendants in an amount to be proven at trial;

G.    Attorney's fees pursuant to 42 U.S.C. § 1988;

H.    Attorney's fees and costs pursuant to Cal. Civ. Code § 52.1(h)

I.    For interest;

J.    For reasonable costs of this suit; and

K.    For such further other relief as the Court may deem just, proper, and appropriate.

DATED: December 11, 2024              **CARRLLO LAW FIRM, LLP**


By: _____
                LUIS A. CARILLO
                MICHAEL S. CARRILLO
                J. MIGUEL FLORES
                Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

The Plaintiffs named herein hereby demand a trial by jury.

DATED: December 11, 2024          **CARRLLO LAW FIRM, LLP**

By: _____
       LUIS A. CARILLO
       MICHAEL S. CARRILLO
       J. MIGUEL FLORES
       Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES